UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

NORTHEAST BUILDING SYSTEMS LLC,

                            Plaintiff,                 **MEMORANDUM & ORDER**
                                                                      22-CV-5179 (MKB)

                        v.

BERKLEY INSURANCE COMPANY,

                            Defendant.

-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Northeast Building Systems LLC commenced the above-captioned action against Defendant Berkley Insurance Company on August 30, 2022, seeking payment of a labor and material payment bond under New York law arising out of services Plaintiff rendered under a subcontract agreement with Defendant's surety, UniMak LLC ("UniMak").[1] (Compl. ¶¶ 4–11,

---

[1] UniMak is not a party in the action before the Court but is the plaintiff in a state court proceeding against Northeast Building Systems LLC, Racanelli Construction Co., Inc., and ABC Companies 1–10 alleging breach of contract, negligence, and defense and indemnification (the "State Court Action"). (*See* Compl.; UniMak Second Am. Compl. ("UniMak SAC") ¶¶ 62–100, annexed to Pl.'s Opp'n to Def.'s Mot. to Stay as Ex. A., Docket Entry No. 30-1; Stip. Discontinuing Action with Prejudice as Between UniMak, LLC and the Village of Rye Brook ("Stip. of Discontinuance"), *UniMak v. Rye Brook*, No. 52484/2021, Docket Entry No. 88.) The Court takes judicial notice of the documents filed in the State Court Action. *See Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (same); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets[,]" but "a document filed in another court . . . [only] establish[es] the fact of such litigation and related filings" (first alteration in original) (citations omitted)); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record, including

Docket Entry No. 1.) Plaintiff contends that Defendant, as a surety for UniMak, is liable to pay an outstanding balance of $128,363.20 pursuant to the labor and material payment bond, together with costs and reasonable attorneys' fees. (*Id.* ¶ 11.)

On November 15, 2024, Plaintiff requested that the Court schedule a trial date. (Pl.'s Request for Trial Date, Docket Entry No. 28.) In response, Defendant requested a stay in the federal action, and Plaintiff opposed the request.[2] For the reasons explained below, the Court grants Defendant's motion to stay the action pending the resolution of the State Court Action.

I. **Background**

a. **The payment bond**

In the summer of 2018, UniMak and the Village of Rye Brook ("Rye Brook") entered into a prime contract under which UniMak agreed to furnish labor and materials for the construction of Rye Brook's Department of Public Works and Parks Garage (the "Project"). (Compl. ¶ 4; UniMak SAC ¶ 6.) As a surety for UniMak, Defendant executed a labor and material payment bond (the "Payment Bond"), which required Defendant to "promptly pay all persons for labor and materials furnished by them in the prosecution of work necessary for the Project." (Compl. ¶ 5.) Plaintiff subsequently entered into a subcontract with UniMak under which Plaintiff agreed to supply labor, materials, equipment, and tools for the Project, including installing a pre-manufactured metal building. (*Id.* ¶ 6.) Plaintiff alleges that Defendant, as a

---

'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'" (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

[2] (Def.'s Mot. to Stay ("Def.'s Mot."), Docket Entry No. 29; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 30; Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 31.)

surety to UniMak, is liable to pay an unpaid balance in the total amount of $128,363.20 pursuant to the Payment Bond. (*Id.* ¶¶ 9, 11.)

### b. State Court Action

On March 4, 2021, UniMak commenced an action in the Supreme Court of the State of New York, Westchester County, alleging state law claims for breach of contract, unjust enrichment, and violation of the New York Prompt Payment Act, and seeking monetary damages against Rye Brook and "fictitious entities/companies/corporations whose identities are not yet known." (UniMak Compl. 1, 7–9, *UniMak v. Rye Brook*, No. 52484/2021, Docket Entry No. 1.) On May 28, 2021, in its answer to UniMak's complaint, Rye Brook filed a counterclaim against UniMak for negligence and defective work, breach of contract, incomplete work, and offset for credits, alleging that UniMak failed to properly install a garage roof for the Project. (Rye Brook's Answer & Counterclaims 13–27, *UniMak*, No. 52484/2021, Docket Entry No. 3.)

On October 31, 2022, UniMak amended its complaint to add Plaintiff as a defendant in the State Court Action. (UniMak Am. Compl. 1, *UniMak*, No. 52484/2021, Docket Entry No. 27.) In its amended complaint, UniMak alleged state law claims against Plaintiff for breach of contract, negligence, and failure to defend and indemnify UniMak against Rye Brook's counterclaims. (*Id*. at 11–13.) On July 21, 2023, in its answer to UniMak's amended complaint, Plaintiff filed counterclaims against UniMak, alleging monetary damages in the amount of $128,363.20 for breach of contract, as well as unpaid costs for labor, materials, and equipment. (Northeast's Answer & Counterclaims 5–7, *UniMak*, No. 52484/2021, Docket Entry No. 54.)

On September 4, 2024, UniMak filed its second amended complaint to add Racanelli Construction Company as a defendant and allege that Plaintiff functions as an "alter ego" of this corporation. (UniMak SAC 1, 9, 14–15.) On September 10, 2024, UniMak and Rye Brook filed a stipulation of discontinuance as to UniMak's claims against Rye Brook. (Stip. of

Discontinuance.) Subsequent to Defendant's request for a stay in the federal action, the State Court certified the matter as "ready for trial" and declined to permit further discovery. (*See* Trial Readiness Order, *UniMak*, No. 52484/2021, Docket Entry No. 98.) The State Court has also held at least one prior settlement conference and has scheduled a second settlement conference for May of 2025.[3]

    **c.    Proceeding in the action before the Court**

On August 30, 2022, Plaintiff commenced this action, seeking payment of a labor and material payment bond under New York law arising out of services Plaintiff rendered under a subcontract agreement with UniMak, Defendant's surety. (Compl. ¶¶ 4–11.) On September 2, 2022, the case was designated to participate in the non-binding Court Annexed Arbitration Program. (Notice Designating Case to Arbitration, Docket Entry No. 6.) On March 20, 2023, after participating in the arbitration program, Plaintiff requested a trial de novo. (Pl.'s Request for Trial De Novo, Docket Entry No. 20; Docket Entry dated Mar. 15, 2023.) On March 22, 2023, Defendant requested leave to file a motion to dismiss. (Def.'s Mot. For Leave to File a Mot. to Dismiss, Docket Entry No. 21.) In the alternative, Defendant sought a stay of this action pending resolution of the State Court Action between Plaintiff and UniMak. (*Id*. at 2–3.) The Court subsequently directed the parties to file additional briefing on the issue of a stay, and the parties requested several extensions of time to file their additional briefing in April of 2023, June of 2023, and July of 2023. (Order dated Apr. 25, 2023; Def.'s First Mot. for Ext. of Time, Docket Entry No. 24; Def.'s Second Mot. for Ext. of Time, Docket Entry No. 25; Pl.'s First Mot.

---

    [3] *See WebCivil Supreme – Appearance Detail*, New York State Unified Court System, https://iapps.courts.state.ny.us/webcivil/FCASSearch (last visited Apr. 25, 2025) (indicating that the state court held a settlement conference on March 27, 2025, and will hold an additional settlement conference on May 22, 2025).

4

for Ext. of Time, Docket Entry No. 26.)  On August 29, 2023, Plaintiff filed a consent motion for an extension of time to file additional briefing on the issue of a stay.  (Pl.'s Consent Mot. for Ext. of Time, Docket Entry No. 27.)  On August 31, 2023, the Court granted Plaintiff's consent motion for an extension of time and directed the parties to file their additional briefing on or before October 13, 2023.[4]  (Order dated Aug. 31, 2023.)  The parties did not request any further extensions of time to file additional briefing on the issue of a stay and did not file any additional briefing on the issue until more than a year later in November of 2024.  (Def.'s Mot; Pl.'s Opp'n; Def.'s Reply.)

On November 15, 2024, Plaintiff filed a letter requesting that the Court schedule a trial date.  (Pl.'s Request for Trial Date.)  In response, Defendant requested a stay in the federal action, and Plaintiff opposed the request.  (Def.'s Mot.; Pl.'s Opp'n.)

## II. Discussion

### a. The Court grants Defendant's request for a stay pursuant to the *Colorado River* abstention doctrine

Defendant argues that the federal action should be stayed because "[t]here is no reason to disturb the active and ongoing [State Court Action] with the prospect of a duplicative trial that risks inconsistent results between the two pending cases."[5]  (Def.'s Mot. 1–2.)  As a threshold

---

[4] In addition, in view of the parties' ongoing settlement negotiations, the Court removed from the motion calendar Defendant's motion for leave to file a motion to dismiss.  (Order dated Aug. 31, 2023.)

[5] In its motion to stay papers, Defendant does not refer to the *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), abstention doctrine.  (*See generally* Def.'s Mot; Def.'s Reply.)  However, because Defendant's arguments address four of the six *Colorado River* factors, (*see* Def.'s Mot. 2–4; Def.'s Reply 2–4), and because Plaintiff's opposition addresses each factor, (Pl.'s Opp'n 3–4), the Court understands the parties to be arguing about the application of these factors and addresses Defendant's motion to stay under the *Colorado River* abstention doctrine.  *Colo. River Water Conservation Dist.*, 424 U.S. at 813–20 (explaining the factors under which abstention is appropriate); *see also Niagara Mohawk Power*

5

matter, Defendant argues the two actions are parallel because the federal court action involves the same claims and defenses as the State Court Action since, as a surety, Defendant "stands in the shoes of UniMak for the purposes of the Payment Bond." (*Id.* at 2–3.) Defendant addresses four of the six *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), abstention factors: (1) whether staying the federal action would avoid piecemeal litigation, (2) which forum's proceedings are most advanced, (2) whether federal or state law provides the rule of decision, and (4) whether state procedures are adequate to protect Plaintiff's federal rights. (*See* Def.'s Mot. 2–4; Def.'s Reply 2–4.) Defendant makes no arguments as to the first two *Colorado River* factors — whether the controversy involves res and the convenience of the federal and state forums. (*See generally* Def.'s Mot.; Def.'s Reply.) First, Defendant argues "[t]he risk of piecemeal litigation is substantial" because, if UniMak and Plaintiff receive favorable judgments in the separate actions, "[a]ny money [UniMak] recovers in the State Court [A]ction would be the result of proving that it incurred damages to repair [Plaintiff's] defective work" and Defendant would "demand that Uni[M]ak reimburse it" to satisfy a judgment in favor of Plaintiff in the federal action. (Def.'s Reply 2.) Defendant contends that "such a situation would result in a windfall to [Plaintiff], and a shortfall to Uni[M]ak." (*Id.*) In the alternative, Defendant argues that a judgment in favor of Plaintiff in the State Court and federal court actions "would create the possibility for double recovery." (*Id.* at 3.) Second, Defendant argues that the

---

*Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100–01 (2d Cir. 2012) (explaining that the six *Colorado River* abstention factors are "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed[] and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights").

State Court Action "is far more developed," while Plaintiff has taken no discovery in the federal action. (*Id.* at 3–4.) Third, Defendant argues that Plaintiff's contract with UniMak "calls for their disputes to be governed by New York State Law" and litigated in Westchester County Supreme Court, which "is exactly what the parties are doing." (*Id.* at 2; Def.'s Mot. 2.) Fourth, Defendant argues there is no prejudice to fully litigating Plaintiff's claims in Westchester County Supreme Court because "[Defendant's] liability on the payment bond is dictated by whether Uni[M]ak actually owes [Plaintiff] any money." (Def.'s Reply 3.) Defendant states that "[t]his [federal] case has effectively been constructively stayed since early 2023," while "[Plaintiff] has been litigating its affirmative claim in a companion Westchester County Supreme Court matter." (Def.'s Mot. 1.)

Plaintiff argues that a stay is inappropriate because "the State Court Action and the [f]ederal [a]ction are not parallel actions, and even if they are parallel actions, the applicable factors weigh against a stay." (Pl.'s Opp'n 1.) As a threshold matter, Plaintiff argues that the state and federal actions are not parallel because the parties and individual claims in each action are different. (*Id.*) Plaintiff contends that the six *Colorado River* abstention factors each weigh in favor of denying the stay. (*Id.* at 1–2.) First, Plaintiff argues that "there is no res or property involved." (*Id.* at 3 (citation omitted).) Second, Plaintiff argues that the second factor "also favors proceeding with the [f]ederal [a]ction" because the state and federal forums "are equally convenient to both parties." (*Id.*) Third, Plaintiff argues that there is not a substantial risk of piecemeal litigation because "the State Court Action alleges numerous claims against Plaintiff that are not subject to the [f]ederal [a]ction." (*Id.*) Fourth, Plaintiff argues that the federal action is more developed because (1) the federal action was filed before UniMak involved Plaintiff in the State Court proceeding and (2) the federal action is ready for trial. (*Id.* at 3–4.) Fifth,

7

Plaintiff acknowledges that "the law supplying the rule of decision is state law." (*Id.* at 4.) Sixth, Plaintiff argues that "the fact that a state 'is competent to adjudicate a plaintiff's claims is largely irrelevant.'" (*Id.* (citing *Dalzell Mgmt. Co., Inc., v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 602 (S.D.N.Y. 2013)).)

The Supreme Court has held that a federal court may abstain from exercising jurisdiction over a case when there is a pending parallel state court proceeding and certain factors weigh in favor of abstention. *Colo. River Water Conservation Dist.*, 424 U.S. at 818–19; *see also Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) ("[A] federal court may abstain from exercising jurisdiction where an existing parallel state-court litigation would accomplish a '*comprehensive disposition of litigation.*'" (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 813, 817–18)); *Krondes v. Nationstar Mortg., LLC*, 789 F. App'x 913, 914 (2d Cir. 2020) ("Under the *Colorado River* abstention doctrine, 'a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources.'" (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012))). "Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same' — when there is an identity of parties, and the issues and relief sought are the same." *U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. East Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (quoting *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)); *see also Yu v. Gao*, No. 24-CV-3902, 2025 WL 80658, at *4 (E.D.N.Y. Jan. 13, 2025) ("[R]aising an alternative theory of recovery . . . is not enough to differentiate the federal suit from the state suit." (first quoting *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362–63 (2d Cir. 1985); and then citing *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142

(E.D.N.Y. 2013))); *Great S. Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002) ("Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.'" (quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998))). "Perfect symmetry of parties and issues is not required." *Potente v. Capital One, N.A.*, No. 16-CV-3570, 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018) (quoting *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013)). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (quoting *In re Comverse Tech., Inc.*, No. 06-CV-1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)); *see also Harman v. Moss & Moss LLP*, No. 23-CV-10614, 2024 WL 5202549, at *4 (S.D.N.Y. Dec. 23, 2024) ("[T]he parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." (citation omitted)); *JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-7145, 2024 WL 709068, at *5 (S.D.N.Y. Feb. 21, 2024) ("Parties are substantially similar when the interests of the parties in each case are congruent[,] namely when they would benefit from the same outcome." (alteration in original) (internal quotation marks and citation omitted)).

If the proceedings are parallel, the court generally considers the following six factors, with the balance heavily weighted in favor of the exercise of jurisdiction:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed[] and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp.*, 673 F.3d at 100–01 (citation omitted); *see Krondes v. Nationstar Mortg.*, LLC, No. 17-CV-4974, 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018) (same) (quoting *Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks omitted)), *aff'd*, *Krondes v. Nationstar Mortg., LLC*, 789 F. App'x 913 (2d Cir. 2020); *see also TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*, --- F. Supp. 3d ---, ---, 2024 WL 5168360, at *2 (S.D.N.Y. Dec. 19, 2024) (explaining that application of the *Colorado River* factors "does not rest on a mechanical checklist, but [rather] on a careful balancing of the important factors" (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)))). Because the balance is heavily weighted in favor of exercising jurisdiction, "[w]here a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522); *see also LeChase Constr. Servs., LLC v. Argonaut Ins. Co*., 63 F.4th 160, 173 (2d Cir. 2023) (explaining that a court has "'little or no discretion to abstain in a case which does not meet traditional abstention requirements," which, "[i]n the context of *Colorado River* abstention, that means that district courts must carefully consider each of 'six factors,'" and weigh neutral factors in favor of retaining jurisdiction (quoting *Niagara Mohawk Power*, 673 F.3d at 99–101)).

      **i.   The State Court and federal court proceedings are parallel**

The pending State Court proceeding for breach of contract, negligence, and defense and indemnification action is a parallel proceeding to this action because (1) substantially similar parties are contemporaneously litigating both cases, and (2) both actions concern Plaintiff's ability to recover for the sum of $128,363.20 pursuant to the Payment Bond. *See Harman*, 2024 WL 5202549, at *4 (finding that the state court and federal court actions were parallel where they arose "out of the same series of events, involve[d] the same issues, and concern[ed] the same, or effectively the same, parties as the New York state-court action"). First, the parties are

substantially similar because, as UniMak's surety, Defendant "stands in the shoes" of UniMak in the State Court Action. *See Golf Grips Depot, Inc. v. Spark Funding LLC*, No. 21-CV-6085, 2023 WL 11758581, at *3 (E.D.N.Y. Jan. 25, 2023) (explaining that "as far as the underlying debt is concerned, [a surety] stands in the shoes of his principal and can avail himself of only those defenses available to it" (first quoting *Gen. Phoenix Corp. v. Cabot*, 300 N.Y. 87, 95 (1949); and then citing *Schneider v. Phelps*, 41 N.Y.2d 238, 242 (1977))); *In re QC Piping Installations, Inc.*, 225 B.R. 553, 562 (Bankr. E.D.N.Y. 1998) ("[W]hen a surety performs under its bond, it 'stands in the shoes' of the other parties to the construction project . . . ." (citations omitted)); *Granite Comput. Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 551 (2d Cir. 1990) ("Under basic suretyship law, a surety's obligations cannot be more burdensome than those of its principal, and 'where the principal is not liable on the obligation, neither is the guarantor.'" (citations omitted)). Second, Plaintiff seeks to recover the same amount pursuant to the Payment Bond for providing labor, materials, equipment and services to UniMak for the same construction project. *See Harman*, 2024 WL 5202549, at *4 (finding that the state court and federal court lawsuits were parallel because the claims were premised on the "same contentions," involved substantially the same factual and legal showings, and overlapping parties); *JPMorgan Chase Bank*, 2024 WL 709068, at *5 (explaining that "the same events underlie [the federal] action and the [state] action" where plaintiff sought recovery "as a result of [defendant's] breaches under the loan and guaranty" and all parties would benefit from demonstrating plaintiff's breach of the agreement). Thus, the State Court and federal court proceedings are parallel.

      ii.    **The *Colorado River* factors weigh in favor of abstention**

As discussed below, in balancing the six *Colorado Rivers* factors, the Court finds that the factors weigh in favor of abstention.

First, there is no res in dispute over which the state court has claimed jurisdiction, and neither party has argued otherwise. (*See* Pl.'s Opp'n 3; *see also* Def.'s Mot.)  Thus, the first factor is neutral and weighs in favor of retention.  *See Niagara Mohawk Power Corp.*, 673 F.3d at 101 (explaining that a neutral factor is a "basis for retaining jurisdiction" under *Colorado River*); *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (noting that "the absence of jurisdiction over a res . . . point[s] toward exercise of federal jurisdiction"); *Dalzell Mgmt.*, 923 F. Supp. 2d at 599 (explaining that the first factor favors retention where the parties "agree that there is no res or property involved over which either court would assume jurisdiction").

Second, because both forums are within the state of New York, and as neither party argues otherwise, the Court finds the forums are equally convenient. (*See generally* Def.'s Mot.; Pl.'s Opp'n.)  The Second Circuit has held that "where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (alteration omitted) (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)); *see also Harman*, 2024 WL 5202549, at *5 (finding the second factor neutral and therefore in favor of retention when both actions occurred in New York).

Third, staying or dismissing the federal litigation would avoid piecemeal litigation.  In resolving Plaintiff's claim, the Court would necessarily have to decide whether the Payment Bond is enforceable against Defendant as UniMak's surety — the same legal and factual issues that form the basis of Plaintiff's counterclaim in the parallel State Court proceeding.  *See Granite Comput. Leasing Corp.*, 894 F.2d at 551 ("[W]here the principal is not liable on the obligation, neither is the guarantor." (citations omitted)); *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 07-CV-5415, 2010 WL 3735786, at *4 (E.D.N.Y. Sept. 20, 2010) (explaining that a "defendant's 'liability under the payment bond is measured by the liability of

its principal,' . . . because '[i]t is a well settled rule in [New York] that the liability of the surety is measured by the liability of the principal'" (second and third alterations in original) (citation omitted)); *U.S. Fid. & Guar. Co. v. W. Rock Dev. Corp.*, 50 F. Supp. 2d 127, 129 (D. Conn. 1999) ("[A] surety's liability derives from that of the principal." (citing *United States v. Seaboard Surety Co.*, 817 F.2d 956, 962 (2d Cir. 1987)). Because maintaining these parallel proceedings would "waste judicial resources and invite duplicative effort," this factor weighs in favor of abstention. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 52–53 (2d Cir. 2020) (affirming the district court's abstention because "the danger of piecemeal litigation was very strong and arguably the key factor" and noting that "avoiding piecemeal litigation may be the paramount consideration under certain circumstances" (citing *Arkwright–Boston Mfrs. Mut. Ins.*, 762 F.2d at 211)); *De Cisneros*, 871 F.2d at 307–08 (affirming abstention under *Colorado River* where "[t]he basis of the district court's decision to abstain [was] the third factor" because the state and federal court litigations were "inextricably linked"); *Nationwide Gen. Ins. Co. v. Rael Maint. Corp.*, No. 23-CV-4433, 2024 WL 1805544, at *7–8 (S.D.N.Y. Apr. 24, 2024) (finding that the third factor "weigh[ed] heavily in favor of abstention" where the plaintiffs sought to recover damages from a flooding incident under New York negligence law in state and federal court).

The fourth factor — whether the proceedings have advanced further in one forum than the other — also weighs in favor of abstention. The State Court Action has completed discovery and is now in an advanced stage of litigation. (*See* Trial Readiness Order.) In contrast, the parties filed no motions and conducted no discovery in this action during the fourteen months between the Court removing Defendant's motion from the motion calendar on August 31, 2023,

and Plaintiff's November 15, 2024 request for a trial date. *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 378 (S.D.N.Y. 2020) (finding that the fourth factor "slightly favor[ed] abstention" where no discovery had occurred in the federal action, while the state action had engaged in more discovery but had "slowed considerably because of disputes"); *see Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (explaining that "it hardly seem[ed] wise to permit plaintiff to start anew in federal court" where "[t]he federal suit . . . like that in *Colorado River*, ha[d] not moved beyond the initial pleadings and the motion to dismiss").

The fifth factor — whether state or federal law provides the rule of decision — weighs slightly in favor of abstention. Plaintiff's claim to recover money pursuant to the Payment Bond is asserted under New York law, does not raise novel or complex state law issues, and does not pose or implicate any federal law issues. As a result, the State Court is best suited to resolve the issues presented by this case. *See Nationwide Gen. Ins. Co.*, 2024 WL 1805544, at *9 (explaining that the fifth factor weights in favor of abstention when the claims implicate "the construction of state and municipal building, safety, and fire codes"); *U.S. ex rel. Robert H. Finke & Sons, Inc. v. A.P. Reale & Sons, Inc.*, No. 12-CV-8643, 2014 WL 901515, at *2, *4 (S.D.N.Y. Feb. 18, 2014) (finding that the fifth factor "only slightly favor[ed]" the defendant-subcontractor where the contractor and sureties asserted crossclaims against the defendant for contribution and/or indemnification under New York law because the crossclaims were not "novel or particularly complex"); *see also Arkwright–Boston Mfrs. Mut. Ins.*, 762 F.2d at 211 ("[I]f either forum is in a better position to sort out the issues presented by this case, it is the state court, as the case involves exclusively questions of local law.").

The sixth factor weighs slightly in favor of abstention as Plaintiff does not argue that

state procedures are inadequate to protect its federal rights. Although Plaintiff argues that the State Court's competency "to adjudicate a plaintiff's claims is largely irrelevant," (Pl.'s Opp'n 4 (citing *Dalzell Mgmt. Co.*, 923 F. Supp. 2d at 602)), Plaintiff does not dispute that the New York courts provide the necessary procedures to protect its rights or that the State Court would not provide "a fair alternative forum that is capable of resolving the . . . issues." *Niagara Mohawk Power Corp.*, 673 F.3d at 103; *see also Nationwide Gen. Ins. Co.*, 2024 WL 1805544, at *10–11 (finding that the sixth factor weighed in in favor of abstention because the court had "no reason to doubt" the state court would resolve the proceedings with adequate procedural protections and without significant delay); *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-CV-1061, 2017 WL 384325, at *7 (E.D.N.Y. Jan. 23, 2017) ("The state court can adequately protect [the plaintiff's] rights. [The plaintiff] raises only state law claims against [the defendant], all of which can be sufficiently litigated in, and resolved by, the state court. This factor weighs in favor of abstention." (quoting *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 144 (E.D.N.Y. 2013))). However, "[t]his factor is 'more important when it weighs in favor of federal jurisdiction.'" *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)).

Therefore, because of the substantial danger of piecemeal litigation related to Plaintiff's ability to recover on the Payment Bond and three of the other factors weigh in favor of abstention, the Court finds that the *Colorado River* factors weigh in favor of abstention and stays this case pending resolution of the State Court Action.[6] *See Lawrence Moskowitz*, 830 F. App'x

---

[6] In addition to opposing Defendant's request for a stay, Plaintiff requests the Court set a trial date for the federal action. (Pl.'s Request for Trial Date 1–2; *see* Pl.'s Second Request for Trial Date, Docket Entry No. 32.) Defendant opposes this request. (Def.'s Mot. 1.) Because the Court grants Defendant's request to stay this action, the Court declines to set a trial date at this time.

at 52–53 (affirming the district court's decision to abstain and explaining that "[t]he district court acted well within the bounds of its discretion in weighting the danger of piecemeal litigation factor more strongly than others"); *EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.*, No. 99-CV-9050, 2000 WL 101233, at *3 (S.D.N.Y. Jan. 26, 2000) (finding where the balance of factors "clearly favors abstention, particularly as factor three, the avoidance of piecemeal litigation, strongly favors abstention" and "[t]he parties must be directed to concentrate their efforts in one forum").

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to stay the federal action pending the resolution of the State Court Action.

Dated: April 25, 2025
      Brooklyn, New York

SO ORDERED:

        s/ MKB
MARGO K. BRODIE
United States District Judge